Chief Justice Robertson,
delivered the opinion of tlic court.
In 1783, Charles Cummins and William Kennedy, made a -contract in writing, whereby the former agreed to convey to the latter, four hundred acres of land in Lincoln, for eight hundred acres in Bourbon-county, which the latter agreed, in like manner, to convey to him.
, Kennedy died before a conveyance had been made -of either of the tracts. He devised his whole estate, ■ apparently, a very large one, to his only two children, ■ James Kennedy and Jannette Beall, wife of Benjamin Beall. The executors wmre authorized to make conveyances; but they -having refused, James Kennedy *643 and Benjamin Beall, were appointed administrators with the will annexed, in 1799.
Cummins obtained a title to only two hundred and' forty eight and a fourth acres, of the four hundred, acres in Lincoln. Wherefore, on the 13th of November, 1802, he conveyed the two hundred and forty eight and a fourth acres, to James Kennedy and Benjamin Beall, as administrators, and a deed of the same date was delivered to him, purporting to be executed, by Kennedy and Beall, as administrators, for four hundred and ninety six and a half acres of the eight hundred acres in Bouibon, in consideration of the conveyance by Cummins, and of one dollar; and in execution-of the contract of 1783, covenanting to warrant the-title to the extent of assets.
Beall having, in the mean time, died, Robert E. Cum-mins, as assignee of Charles Cummins, brought an action of covenant against Kennedy, alleging an eviction, by a paramount title.
The writ was executed on Kennedy, om the 24th.-of' December, 1821, and at the January term, 1722, of the general court, in the absence of Kennedy,.but alter-an appearance had been entered, $nd defence made for-him, a special verdict was returned against him, in which the jury assessed the balance of each tract of land (as-conveyed) including principal and interest, from 1783, at ,§'1027 6í cents. And also assessed the Lincoln-, tract at $5358 534 cents, principal and interest from the-date of the deeds, and the Bourbon tract in the like-manner at $3529 25 cents.
On this verdict, the general court rendered judgment for the assessed value, in 1783. On a writ of error prosecuted by Cummins, this court, in 1823, reversed the judgment of the general court, and directed judgment to be entered for $3529 25 cents, the assessed value of the Bourbon tract, in 1802, including principal and interest. Judgment having been entered accordingly, Kennedy instituted this suit in chancery.
The bill alleges, that Kennedy never signed nor acknowledged the deed, nor authorized any person to do-so for him. That when the writ was served, he was disabled by disease from riding, or attending to business; *644 and continued so- disabled, until long after the adjourn'-" ment of the general court, in January, 1822. That the appearance entered for him, was unauthorized by him. That if he could have attended to his defence, he would have shown that the deed was not his; and that the assessment by the jury was too high. He therefore, prayed for a new tria], and for general relief.
The answer denies all the material allegations.
An attended answer, in the nature of a cross bill, charges, that Beall was authorized' by Kennedy to sub-, scribe his name to the deed; that Kennedy was bound,, as administrator and as devisee by the covenant of his. father; that the estate devised to them. Was large, and exceeded the amount of the judgment; it, therefore, calls on him to disclose the extent and value of the estate of his father, and prays for a decree against him as devisee, if be should extricate himself from the judgment.
The answer to the cross-bill, avers that Beall was not "justly and legally authorized to act for Kennedy, and to acknowledge thw deed"
It alleges, that Kennedy sold his interest in his fa t.her’s estate, to Beall, in 1800, for about $2000, after-reserving two hundred acres of land, and four slaves. That Beall was tp pay all the debts which might devolve on the estate. That' he had accordingly made payments exceeding the value of the whole personal estate considerably. That the real estate devised by his father, was large, but was embarrassed in title and encumbered with debts. But the value of the estate is not suggested, nor is its extent disclosed, unless a cata-logue of lands, which appears in the record, was exhibited as an appendage to the answer. The answer virtually admits, that Beall’s heirs had succeeded, on the plea of “no estate by descent,”-in an action of covenant by Cummins against them on the warranty in the deed; and also admits, that Beall informed Kennedy of the execution of the deed, in a short time after its acknowl-edgement. But it does not appear, trom the answer, whether or not, Kennedy knew that Beall had acknowledged the deed for him, or attempted to bind him by it. The answer exhibits the agreement between W. Kennedy and C. Cummins, which had been surrendered on the delivery of the deeds.
Chancellor will compels new trial at law when a t^t^íhad grounds exclud-¡ieely legal, hav^rocured f0‘r him a more favour-, tli5|eFcl§nlen!! a reasonable opportunity of being prepared on-the ^ law,. and also, that he was unable by the use of gence, topre-pare for trial,, or to move fora new trial. ' But, if the ofrehefin * chancery are purely equita-the chancellor had original jurisdiction of conc'lr[ent'y with the common law judge, a new awarder?, but thechancellor a decreeTet-^ tling the out remitting them to the8' common law *
There is no evidence tending to prove that the assessment by the jury, was excessive; nor any, except what may be drawn from the allegations of the parties, as the extent or value of the estate devised to Kennedy. . .
. . But the attorney, who defended the action oí covenant for Kennedy, swears, that he did so at the instance of one of the heirs of B. Beall, and without any authority from Kennedy. And there is evidence, tending to prove the allegations of the hill, as to the condition of Kennedy, when the judgment was rendered against him, and also, to show that the signature of his name to the deed, is in the hand writing of B. Beall, and that Beall acknowledged the deed for him, profess-mg to act as his agent; and there is no positive proof of his authority as agent.
. Kennedy having died pending the suit, it was revived in the names of his administrators. '
The general court decreed a perpetuation of the injunction to the judgment, unless the plaintiff would consent to a new trial at law. This writ of error Í3 prose.cuted to reverse that decree.
Sumiiicient reasons have not been shown for sustaining the decree. The chancellor should compel a new trial at law, when the complaining party shall have shown clearly, that he had grounds expluixdy legal, which he could llave so far maintained, as to h;ive entitled him to a judgment more advantageous, than that of which he complains, if he bad had a reasonable opportunity of being prepared on the trial at law; and also, that he was unable by the use of ordinary diligence, to prepare riUi-i j. J f ior tno trial or to move the common law court for a new trial. If the only grounds for. relief in chancery be purely equitable, or such as the chancellor had original jurisdiction of, concurrently with the common law judge, a new trial should not, as a matter of course be decreed, but the court siould generally close the controversy by a decree, settling - he rights of the parties without remit jug them to the decision of a common law tribunal. This is, however, only a general rule, which is not, of course, indexible or universal in its application, to cases in which chancery and common law have concurrent jurisdiction. In this class of cases, the chancellor may, after a trial at law without *646 decree a new trial, if it be expressly prayed for, although it would be generally more proper, if the case Be very clear, to decree relief in another mode.
In this case, if the main ground relied on by the defendants, be exclusively cognizable in a court of common law, and that ground be satisfactorily established by the proof, a decree for a new trial would have been proper. There is no proof, nor even any sufficient allegation as to the alleged excessiveness in the assessment by the jury; consequently, the only ground for a new trial, is the alleged non-execution of the deed, and Kennedy’s inability to make defence. The defence made ■ for him, should not operate conclusively against, his-claim to a new trial.
The attorney, who made that defence, has sworn-that he was not employed by Kennedy, nor authorized by him to make any defence for him. This would have been a sufficient ground for a new trial, if application had been made to the common law court, whilst it had control of the case; and, therefore, as it appears that Kennedy was not able to attend the general court during the term when the judgment was rendered, the chancellor might decree relief, if a new trial ought to have been granted by the general court, on application to it, in due time.
It does not appear that Kennedy’s mind was diseased: or seriously affected by his bodily affliction; and it was possible, therefore, for him to employ a lawyer, and make affidavit to a plea of non est factum, and to make an affidavit for a continuance; by doing either of which he might have procured a continuance.
It is even probable, that, by filing the plea, he could have defeated the action unless, the deed should be obligatory on him, for, as it is incontestibly shown, that the signature of his name to the deed, is not in his hand writing, but in that of B. Beall, the burthen .of producing authority to sign his name, would have devolved on the plaintiff. But more- than ordinary diligence should not be exacted. Kennedy might not have been able to swear to a plea of non est factum, without inspecting the original deed. He had not even seen the declaration; and, therefore, may not have known the specific cause of action. As, therefore, he was unable to at *647 tend court, his failing to make any preparation for a continuance or for a trial, is entitled to no decisive effect to his prejudice; see Pebles vs. Ralls, I Litt. Rep. 24.
When teh sealor signature of a person has, wiih'out competent author-affixedTo a deed chancellor may . grant the par-againsUhe deed on the ground either qj/atimet,
If the deed be not obligatory on Kennedy, he might (before the suit at law,) have been relieved in chancery,
A court of equity might have taken cognizance of a bill for relief, on either of two grounds;
1st. Quasi trust.
2d. Fraud.
A chancellor might have decred an exoneration from the deed. Jacob in his law dictionary, after, stating that a deed may be avoided by a judgment or decree, says; “this was anciently the practice of the court of Star-Chamber, and now of the chancery; when it appears that the deed was obtained by fraud, force, or other foul practice, or is proved to be an obsolute forgery.” '
This court, in the case of Leigh vs. Everhart’s executors, V Mon. said that, “forgery of a deed or other instrument, is, of itself,,a gross fraud upon the person whose seal or signature is forged; and there seems to be no good sense in refusing relief against this kind of fraud, when other frauds less aggravated, are relieved against by ordering the deeds or papers to be delivered up.”
We are not aware, that it has ever been expressly decided, that, after a judgment at law, chancery will relieve from an obligation, on the ground that is a forgery, unless defence was made to the action at law.
And upon this point, we shall not express an opinion, as sufficient ground has been shown for the interposition of the chancellor in this case without a concurrence of, jurisdiction by common law and chancery. A sufficient excuse for not pleading non est factum on the trial in the general court, has been shown.
It is far from being clearly shown that Kennedy was not bound by the deed.
1st. The signature of Kennedy is in Beall’s band writing, and the clerk of this court certified, that Beall acknowledged the deed as attorney in fact for Kennedy.
*648 2d. Kennedy, as well as Beall, was bound to make á deed.
3d. In a short time after the deed was made, Beall told Kennedy that he had conveyed the title to Cum-mins.
4th. It does -not appear that Kennedy ever complained until since the first judgment was reversed by this court.
5th. In his answer, he is somewhat evasive'; when he says, that Beall ‘‘was not justly and legally authorized.
What deductions a jury might draw from these considerations this court cannot determine. There are also, some strong opposing facts. And although the. defendants have not shown clearly, (hat the deed should 'not bind them; enough has been shown to entitle them to a new trial. They have a right to the benefit of a trial of all the facts by a jury, as an opportunity for that purpose, has never yet been afforded.
if it had been shown that the defendants are under equitable obligations (o pay the judgment, even if the deed be not legally obligatory, a court of equity should not decree any relief tiom the judgment.
But it does not appear that any obligation exists to the full extent of the judgment, independently of the deed.
James Kennedy, was bound by his father’s covenant. He has not only not shown that, as devisee,his estate was insufficient, but has shown that tr.e property which he held in that character, exceeded in value, the full measure, of liability on l.is father's covenant. But this obligation is not co-ex ensive with the judgment. The obliga-.ion resuhing from the co\en.mt of William Kennedy, and that which would be imposed by the deed, differ very materially in their extent and consequences. The former is much more limited than the latter. The value of the land in 17d3, or in other “words, $1027, would be the ns plus ultra of recovery allowable on the covenant. A larger sum should not be exacted, without affording a reasonable opportunity for trying the facts on a new trial.
If the plaintiff is unwilling to hazard the consequences of such a trial, he should not be allowed to enforce *649 bis entire judgment. But, in that event, be is entitled io as much of his'judgment as the defendants would; be bound to pay on the covenant of William Kennedy. In a cross bill, he asked for a decree to this extent, on Condition that he should be considered as entitled to no more. The decree of the general court would bar any Other suit, and consequently would deprive the plaintiff "of all light to reparation'; and even :if it would not have this effect, the court ought not to hake perpetuated the injunction for more than the difference between the liability on the deed and that in the article pf agreement, because, in equity, the judgment should not be disturbed furthef than it exceeds the actual liability, admitting the invalidity of the deed.
Denny and Hoggin, for plaintiff'; Crittenden, for defendant.
Wherefore, the decree is reversed, and the'causé remanded, with instructions to render a decree (unless the plaintiff shall consent to a new trial,) perpetuating Hie injunction for so much of his judgment, as he would not be entitled to, on the covenant of William Kennedy; and dissolving it with damages, for the residue.